**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION III**

| | | |
|---|---|---|
| In re Demand for Recusal of Judge George Fearing | ) ) ) ) ) ) | No. 39949-4-III<br><br>ORDER REGARDING<br>SEPTEMBER 25, 2023<br>LETTER RULING |

On August 2, 2023, the Spokane County Prosecutor's Office filed a motion requesting that Judge George Fearing be disqualified from all criminal appeals arising from Spokane County Superior Court. On September 25, 2023, Judge Fearing issued a letter ruling that denied the motion in part. This letter ruling, although not authoritative because it was not an opinion of this court, contains analysis that will be helpful if a similar motion is filed in the future.

IT IS HEREBY ORDERED that the September 25, 2023, letter ruling attached hereto be noted in official reports in the same manner as an unpublished opinion of this court.

**FOR THE COURT:**

*Lawrence-Berrey, C.J.*
CHIEF JUDGE

GEORGE FEARING
JUDGE
DIVISION III
NORTH 500 CEDAR STREET
SPOKANE, WASHINGTON  99201

*The Court of Appeals
of the
State of Washington
Division III*

(509)456-3922
george.fearing@courts.wa.gov



September 25, 2023

Re:   In re Demand for Recusal of Judge George Fearing
      Washington State Court of Appeals Division III
      Cause # 399494

Dear Proponents and Opponents of Disqualification:

*Dear Members of the Spokane County Community,*
*The judicial officers of Spokane County Superior Court each*
*swear an oath to support the Constitution of the United States and of*
*the State of Washington.  We are charged to faithfully and impartially*
*discharge the duties of office to the best of our ability.  Our Code of*
*Conduct recognizes that the judiciary plays a central role in*
*preserving the principles of justice and the rule of law that is the basis*
*of our United States legal system.  This code also requires that we*
*avoid comment in order to maintain the neutrality demanded of us*
*and to avoid the appearance of endorsing a position on an issue that*
*might come before us.  In the face of recent reminders of the persistent*
*devaluation and degradation of Black lives in America, we believe in*
*the importance of not maintaining our silence in this instance.*

*There can be no debate that the constitutions we are sworn to*
*uphold are intended to make all of us equal in the eyes of the law.  It*
*is with painful awareness that we acknowledge shortcomings that*
*have resulted in systemic racial injustice against Black Americans*
*and Black citizens of our state and county.  It is with candid honesty*
*that we recognize the role that the courts have played in these*
*injustices.  We must be better about recognizing shortcomings in*
*ourselves, in our systems and in our leaders.  It is only then that we*

> *can roll up our collective sleeves and begin the hard work of
> instituting and institutionalizing real change.*
>
> > *We do not claim to possess immediate answers to longstanding
> questions. We do, however, pledge to listen better, do better, and be
> better, when and where we can, to eradicate racism and establish
> systemic reforms in our justice system.*
> >
> > *Sincerely, Spokane County Superior Court*
> > 2020

Pending before me is a demand by the Spokane County Prosecuting Attorney's Office (prosecuting attorney's office) to disqualify myself from all criminal appeals arising from Spokane County Superior Court. The demand arises from an opinion I wrote in *State v. Vaile*, 26 Wn. App.2d 1040, 2023 WL 3371574 (2023). Although I wrote a concurring/dissenting opinion in the *Vaile* appeal, I will refer to my opinion as the *Vaile* dissent. I have temporarily recused myself from all Spokane County criminal cases while awaiting the filing of more letters in support of and in opposition to the demand. Washington Court of Appeals Division III has opened a file concerning the demand, labeled the file "In re Demand for Recusal of Judge George Fearing," and numbered the file # 399494. We have treated each letter as a pleading. I do not know if any more letters will be filed, but I will not review any more.

I grant the demand for disqualification in part and deny the demand in part.

I have reviewed the following pleadings, all of which arrived at this court in the form of letters:

August 2, 2023 letter from the Spokane County Prosecuting Attorney's Office demanding recusal;
September 6, 2023 letter from city of Spokane Police Chief Craig Meidl;
September 7, 2023 letter from Spokane County Sheriff John F. Nowels;
September 12, 2023 letter from Washington Appellate Project;
September 14, 2023 letter from Spokane County Counsel for the Defense;
September 15, 2023 letter from Spokane Police Lieutenants and Captains;
September 15, 2023 letter from Washington Defender Association;
September 15, 2023 letter from Washington Association of Criminal Defense Lawyers;

September 15, 2023 letter from Peace and Justice Action League of Spokane;
September 18, 2023 letter from Washington State Office of Public Defense;
September 20, 2023 letter from Spokane Community Against Racism;
September 22, 2023 letter from Unitarian Universalist Church of Spokane;
September 22, 2023 letter from The Way to Justice;
September 22, 2023 letter from NAACP Spokane Chapter;
Undated letter from Spokane Police Guild; and
Undated letter from Spokane County Deputy Sheriff's Association

This letter ruling first addresses the procedure for disqualification of a judge and the rules of disqualification for bias. The ruling then reviews my background as a civil litigator, my relationship with the Spokane County Prosecuting Attorney's Office, and rulings issued by me in Spokane County criminal cases in the last year. This ruling next answers accusations from the prosecuting attorney's office. This letter ruling ends with a review of events since issuance of the *Vaile* decision, a list of cases in which I will recuse myself, and some final observations.

------------

I question the process, by which the prosecuting attorney's office has demanded recusal. RCW 4.12.040 and .050 permit a litigant in superior court to disqualify one judge by the filing of a notice. RCW 3.34.110 affords a party a similar opportunity in district court. No court rule or statute authorizes a motion or allows a party to file a notice of disqualification or recusal of a Washington State Supreme Court justice or Washington State Court of Appeals judge. Presumably, the lack of such statutory process, despite being afforded in other levels of Washington courts, reflects that no appellate judge renders a decision on his, her, or their own.

Assuming a demand for recusal against a Washington State Court of Appeals judge is permissible, a motion may need to be filed in a pending appeal. The Spokane County Prosecuting Attorney's Office seeks a blanket disqualification for all cases. I might deny the demand on this basis, require that discrete motions be filed in individual appeals, and require the prosecuting attorney's office to show any bias with respect to the particular type of case on appeal. I have nonetheless determined to address the merits of the demand.

The prosecuting attorney's office sent the demand for my disqualification to all judges of Court of Appeals Division III. The prosecuting attorney's office, presumably to create division within this division, impliedly, if not expressly, demanded that the entire court resolve whether I should be disqualified from Spokane County criminal cases. The prosecuting attorney's office cited no law that affords other judges on this court authority to decide the disqualification of one judge. Washington Code of Judicial Conduct (CJC) 2.11(A) reads, in relevant part: "(A) *A judge shall disqualify himself or herself* in any proceeding in which the judge's impartiality might reasonably be questioned." The rule directs the individual judge to make the decision.

No legal proceeding should be about a judge. I do not wish to be a judge in a case wherein one of the parties or a party's counsel does not wish me to serve. I sometimes sit as a superior court judge pro tem and do not do so unless both sides agree. But CJC Rule 2.7 demands that I decide matters assigned to me on the Court of Appeals unless recusal is warranted. One comment under the rule declares that unwarranted disqualification may bring public disfavor to the court and the judge. Also, the prosecuting attorney's office's demand for my disqualification from Spokane County criminal cases holds implications beyond my removal.

A majority of cases resolved by the Court of Appeals are criminal cases. Spokane County is the largest county in Court of Appeals Division III. Although I have recused myself temporarily from Spokane County criminal appeals, a long-term disqualification would be administratively burdensome to the court.

------------

Code of Judicial Conduct (CJC) Rule 2.11 governs disqualification of a judge for bias. The rule reads, in pertinent part:

> Disqualification (A) A judge shall disqualify himself or herself in any proceeding in which the judge's *impartiality might reasonably be questioned*, including but not limited to the following circumstances: (1) The judge has a *personal bias or prejudice*

*concerning a party or a party's lawyer*, or personal knowledge of facts that are in dispute in the proceeding.

The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that a reasonable person knows and understands all the relevant facts. *Sherman v. State*, 128 Wn.2d 164, 206, 905 P.2d 355 (1995.) Like all legal issues, judges determine appearance of impropriety, not by considering what a straw poll of the only partly informed person-in-the-street would show, but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988). A judge's being critical of a party, such as by sanctioning the party for misconduct, does not necessarily form a basis for recusal. *West v. State, Washington Association of County Officials*, 162 Wn. App. 120, 137, 252 P.3d 406 (2011). The entirety of the facts presented behind my career, my contact with the Spokane County Prosecuting Attorney's Office, and my track record of decisions in Spokane County criminal appeals would not lead a reasonable person to question my impartiality.

One might ask whether, in the context of the Spokane County Prosecuting Attorney's Office demand for disqualification because of an opinion I wrote in a case with racial implications, the Washington Supreme Court would ask that I employ a standard of the objective person who understands the history of systemic racism in the American criminal justice system. *Henderson v. Thompson*, 200 Wn.2d 417, 422 (2022). To resolve the motion, however, I need not do so.

The Spokane County Prosecuting Attorney's Office and letters from law enforcement officers suggest that I am biased against female assault victims and against law enforcement officers. Nevertheless, CJC 2.11 references bias against a party. Victims and law enforcement officers are not party to a criminal prosecution. The State of Washington is the party. Even if Spokane County law enforcement and prosecuting attorneys lack an interest in eradicating racism from the criminal justice system, the real party in interest, the state of Washington, does. *State v. Bagby*, 200 Wn.2d 777, 522 P.3d 982 (2023); *State v. Zamora*, 199 Wn.2d 698, 512 P.3d 512 (2022).

In addition to lacking bias against female victims of assault, law enforcement officers, and the Spokane County Prosecuting Attorney's Office, I am not biased towards the state of Washington. The state of Washington is my employer.

------------

Because of the Spokane County Prosecuting Attorney's Office claim that I hold bias against law enforcement and prosecuting attorneys, I describe my background. I was appointed to Washington State Court of Appeals Division III, District 2, in 2013. The district covers Adams, Asotin, Benton, Columbia, Franklin, Garfield, Grant, Walla Walla, and Whitman Counties. Since my appointment, I have won election three times.

Before I became a judge, I practiced law, with my office in the Tri-Cities, for thirty-one years. My practice focused on representing cities, counties, irrigation districts, school districts, port districts, public utility districts, and other municipal corporations in contract, employment, and tort litigation. In the course of my career, I represented the counties of Benton, Columbia, Franklin, Grant, Klickitat, Walla Walla, and Whitman in litigation. I represented the cities of Benton City, Cheney, Clarkston, Connell, Ellensburg, Goldendale, Grandview, Kahlotus, Kennewick, Mabton, Mesa, Moses Lake, Othello, Pasco, Prosser, Pullman, Richland, Selah, Sunnyside, Tieton, Toppenish, Union Gap, Waitsburg, Walla Walla, Warden, West Richland, and Zillah. I also represented employees of these municipalities.

Assuming I had a subspecialty as a civil litigator, my subspecialty was the defense of police departments, sheriff departments, police chiefs, sheriffs, police officers, and sheriff deputies in tort litigation. I represented law enforcement agencies and their employees in suits involving accidents, common law torts, and alleged civil rights violations. The common law tort and civil rights actions included allegations of false arrest, illegal search and seizure, excessive force, and racially biased conduct. Many of the claims implicated the Fourth and Fourteenth Amendments of the United States Constitution. Some of these suits went to trial, including trials in federal court. I defended sheriffs and sheriff deputies of Benton, Columbia, Franklin, Grant, Klickitat, and Walla Walla Counties. I defended police chiefs and police officers of the cities of Cheney, Clarkston, Goldendale,

Grandview, Kennewick, Mesa, Moses Lake, Othello, Pasco, Prosser, Richland, Selah, Sunnyside, Union Gap, Walla Walla, Warden, West Richland, and Zillah.

Of all of the litigation I handled in three decades as a trial attorney, I valued most the representation of law enforcement officers. I considered suits against law enforcement officers to concern more than money. The suits also entailed the honor of the law enforcement officers, and I was honored to represent them. I continue to have high regard and respect for law enforcement officers. I have no ill will toward the Spokane County Sheriff and Spokane County sheriff deputies. I have no ill will toward the City of Spokane Police Chief or city police officers. Spokane law enforcement officers need to learn that occasional criticism does not mean that one dislikes or dishonors officers.

When representing counties, I usually interfaced with the elected Prosecuting Attorney or a civil deputy in the Prosecuting Attorney's Office. When representing cities, I usually interfaced with the city attorney. I enjoyed my relationship with city attorneys and prosecuting attorneys. I have high regard for prosecuting attorneys and city attorneys. In at least two cases, I defended a prosecuting attorney in a civil lawsuit. Spokane prosecuting attorneys need to recognize that occasional criticism does not equate to dislike or dishonor toward the attorneys.

On more than one occasion, a Franklin County and Benton County Prosecuting Attorney appointed me as a special deputy prosecuting attorney to assist in a criminal case. For a period of months in the 1980s, I wrote some appellate briefs for the Franklin County Prosecuting Attorney's Office in criminal appeals.

I repeatedly represented the city of Pasco and its fire department in claims asserted over a period of decades by an African-American firefighter, who accused the fire department and its employees of discriminatory treatment and a hostile work environment. I repeatedly defended cities, counties, and other municipal corporations against claims of racial discrimination.

In the late 1980s or early 1990s, I served as a Franklin County special deputy prosecuting attorney in a case brought by a landowner for a declaratory ruling that a real property tax lien was void because the county had failed to timely

foreclose on the land. I considered the case an easy win because, under Washington law, a tax lien never expires. Nevertheless, I recommended to the Franklin County Prosecuting Attorney that the county file an affidavit of prejudice against one of the Benton-Franklin Counties Superior Court judges who usually ruled in favor of a citizen against a government entity. An affidavit of prejudice was the former method of disqualifying a superior court judge. The prosecuting attorney responded that the government does not "affidavit" an elected judge. The short answer was "no." The county lost before the superior court judge, who I recommended be affidavited. The county, with my representation, won before the Court of Appeals, but the appeal added costs.

------------

Because of the Spokane County Prosecuting Attorney's Office claim that I am biased against it, I describe my relationship with the office. During my tenure as a Court of Appeals judge, Spokane County Deputy Prosecuting Attorneys Mark Lindsey, Andrew Metz, Brian O'Brien, Gretchen Verhoef, Larry Steinmetz, Brett Pearce, and Alexis (Lexie) Lundgren have appeared before this court. I have enjoyed my relationship with each of the deputy prosecuting attorneys and think highly of all. Neither elected Prosecuting Attorney Steven Tucker nor Larry Haskell has appeared before this court. Although I question some of Mr. Haskell's conduct, I hold no ill will toward him.

Brett Pearce and Alexis Lundgren both served as law clerks at Court of Appeals Division III, although they did not work as my law clerk. I enjoyed my relationship with both of them during their respective tenures with this court. I thought highly of the work performed by each.

Before the Spokane County Prosecuting Attorney's Office hired Alexis Lundgren in May 2021, she asked me to send a letter of recommendation to the office. I wanted then and continue to now wish the prosecuting attorney's office to have excellent representation in its appellate division. Because of my high regard for Ms. Lundgren, I sent a letter of recommendation to the prosecuting attorney's office. At the time I sent the letter of recommendation, I knew about most of the facts and data I mention in the *Vaile* dissent, about which the prosecuting attorney's office now complains. I then had the same opinion of Larry Haskell as I do now. The prosecuting attorney's office hired Ms. Lundgren.

Attached as Appendix A is a recent e-mail I sent to Ms. Lundgren complimenting her for her work on behalf of the Spokane County Prosecuting Attorney's Office. I also complimented the accused's attorney in the same letter.

CJC Rule 2.11 also requires disqualification if the judge has a personal bias or prejudice against a party's lawyer. The law does not require disqualification if the judge does not like the lawyer, has ruled against the lawyer before, thinks poorly of the lawyer, or has been critical of some of the attorney's conduct. To repeat, I have no personal animosity against any members of the prosecuting attorney's office, let alone Larry Haskell. I have not met Mr. Haskell.

One might ask, for purpose of CJC Rule 2.11, who is the attorney in a criminal appeal? Larry Haskell's name is on all pleadings filed by the Spokane County Prosecuting Attorney's Office as the elected Prosecuting Attorney, but he does not sign the briefs, nor argue any appeals before this court. When I was a young practicing attorney, one of the Benton-Franklin County Superior Court judges removed himself from all cases, in which my senior partner represented a party, because of irritation caused by that partner's courtroom style. The Superior Court judge did not remove himself from cases, in which other members of my firm represented a party. I have no personal bias against Larry Steinmetz, Gretchen Verhoef, Brett Pearce, or Alexis Lundgren, the attorneys who now practice before this court. I have never criticized any of the attorneys.

------------

We may easily determine whether I hold bias against Spokane law enforcement, the Spokane County Prosecuting Attorney's Office, or elected Prosecutor Larry Haskell by reviewing appellate decisions from Spokane County criminal cases, in which I served on the three-judge panel. Attached as Appendix B is a complete list of other cases during the past year, in which I sat as a panel member. Because I spent two hours and forty minutes researching and compiling the list, I did not go beyond one year. In all other twenty-five cases from Spokane County during the last year, I agreed with the other two members of the panel as to the disposition of the appeal. In all but one decision wherein the defendant challenged convictions, this court affirmed all convictions. In the one other decision, this court affirmed three convictions, but reversed one conviction. Based

on this information, a critic could call me a "yes-man" for Spokane County law enforcement officers and prosecuting attorneys.

During the time period involving the twenty-five decisions in the past year, I had the same opinion of elected prosecuting attorney Larry Haskell as I do now. I also knew all the information included in the *Vaile* dissent.

I inevitably disagreed with the majority of the panel and dissented in other appeals from Spokane County criminal cases during the decade I have served on the Court of Appeals. Any dissents have been rare, however.

In short, the prosecuting attorney's office's position that I possess wholesale disregard and dislike of law enforcement officers and prosecuting attorneys is a fabrication and exaggeration that damages the credibility of the office's demand for disqualification.

------------

I now address accusations leveled against me by the Spokane County Prosecuting Attorney's Office and Spokane law enforcement officers. These accusations rest on erroneous allegations and misrepresentations.

The prosecuting attorney's office insists that I conceded bias in *State v. Vaile*. Spokane Police Chief Craig Meidl wrote in his letter that he agrees with me on one thing-I am biased. I wish Chief Meidl had read my entire opinion. I did not write that I am biased against the State of Washington. I did not write that I am biased against the Spokane County Prosecuting Attorney's Office. I did not write that I am biased against law enforcement officers or female assault victims. I wrote that I am partial against racial prejudice and institutional racism. CJC Rule 2.3 compels me to prefer racial equity over racial bias.

The prosecuting attorney's office mistakenly accuses me of not taking seriously assaults against women because of comments I made in the *Vaile* dissent. The undisputed facts showed that Darnai Vaile assaulted Patricia Murray by an unconsenting kiss such that I would likely have affirmed any conviction of Vaile for an assault. Nevertheless, this accusation, as mentioned by many opponents of my recusal, is insincere and hypocritical.

To employ irony, Spokane law enforcement officers and the prosecuting attorney's office were so concerned about the assault of a woman that they declined to charge Darnai Vaile with the unconsenting kiss of Patricia Murray. Instead, they prosecuted the victim, Patricia Murray, for obstructing justice. Although the victim's sister denied such, the prosecuting attorney charged the sister with striking a sheriff deputy. Under the State's version of the case, which a jury accepted, the victim's sister was so distressed by law enforcement officer conduct towards Vaile that she struck one of the deputies.

The prosecuting attorney's motion and letters from law enforcement officers fail to mention that Patricia Murray and her sister came to the defense of Darnai Vaile because of the sheriff deputies' handling of Vaile. The State successfully precluded the playing of an audio recording of Murray demanding that the deputies leave Vaile alone because he was cooperating with the officers and acting gently. The prosecuting attorney's office and law enforcement fail to recognize the racism inherent in charging Darnai Vaile with assault of an officer when the only photographs shown to the jury depicted injury to Vaile. The prosecuting attorney's office fails to recognize the inequity of charging Vaile with two counts of resisting arrest despite his only being arrested once.

In two appeals, I confirmed the conviction of a defendant on the charge of rape when a member of the panel dissented and would have overruled the conviction: *State v. Henderson*, 12 Wn. App.2d 1085 (2020); *State v. Chavez*, 200 Wn. App. 1037 (2017). I wrote the leading Washington decision on sex trafficking of women that affirmed a conviction for the crime. *State v. Braun*, 20 Wn. App.2d 756 (2022).

In the *Vaile* dissent, I criticized the State's trial counsel for falsely claiming, during jury summation, that Sheriff Deputy Criswell testified that he saw Darnai Vaile with deputies on each arm and Vaile tossing each deputy as if each was a rag doll. The prosecuting attorney's office faults me for this criticism on the theory that trial counsel made an innocent mistake. According to the prosecuting attorney's office, trial counsel intended to tell the jury that Sheriff Deputy Clay Hilton testified to these facts. The closing statement of the trial prosecutor and the testimony of Deputy Hilton belie this theory.

The context in which trial counsel incorrectly recited testimony shows that counsel intended to refer to Deputy Criswell, not Deputy Hilton.  I quote the entire comments of the State's attorney:

> You heard from Deputy Criswell.  He also responded to the scene.  When he got to the scene, he testified he didn't see any of the preliminary activities, but he saw the deputies, one on each arm, trying to control Mr. Vaile.  He saw the knife that was lying on the ground.  He testified that it looked to him as if Mr. Vaile was tossing the deputies around like they were rag dolls.

RP 678.  Deputy Criswell, not Deputy Hilton, arrived at the scene after the "preliminary activities."  Deputy Hilton was present with the first wave of law enforcement officers.  Just as important, Hilton never testified to Darnai Vaile as tossing deputies as if they were rag dolls.

Prosecuting attorneys and law enforcement officers take offense to my writing that they participated in racism.  They imply that I outright called them racists.  To the contrary, I never called anyone a racist, except Leslie Haskell.  The prosecuting attorney's office's protestation against my labeling of conduct as racist fails to recognize the nature of institutional racism and shows a lack of understanding of recent Washington Supreme Court decisions on racism.  Institutional racism often results from the behavior of persons who do not intend racial prejudice or harm.

When determining whether the accused received a fair trial, the Washington Supreme Court does not ask whether the State's attorney intentionally appealed to racism.  *State v. Bagby*, 200 Wn.2d 777, 791 (2023).  No one admits to racism and will genuinely resort to race neutral reasons when explaining biased comments. *State v. Bagby*, 200 Wn.2d 777, 791 (2023).  A court should focus on the racist rhetoric, not racist prosecutors.  A court must focus on the language not the moral culpability of the State's attorney.  Mary Nicol Bowman, *Confronting Racist Prosecutorial Rhetoric at Trial*, 71 Case W. L. Rev. 39, 46 (2020).  The Washington Supreme Court has instructed courts not to base decisions on the subjective intent of government actors, but on the viewpoint of an objective observer who has studied the history of persistent racism in America and who recognizes how race discrimination impacts the justice system in nonexplicit,

implicit, and unstated ways. *Henderson v. Thompson*, 200 Wn.2d 417, 422 (2022); *State v. Jefferson*, 192 Wn.2d 225, 249, 429 P.3d 467 (2018) (plurality opinion).

The Spokane County Prosecuting Attorney's Office accuses me of maligning the superior court judge in *State v. Vaile*, Tony Hazel. I have high regard for Judge Hazel. I do not value the prosecuting attorney's office attempt to sow discord between Judge Hazel and myself.

The Spokane County Prosecuting Attorney's Office accusation of maligning Judge Tony Hazel illustrates one impediment to eradicating racism from the criminal justice system. Judges, prosecuting attorneys, and law enforcement officers are often friends and sometimes close friends. Often a prosecuting attorney and a sheriff rely on one another for assistance in election or reelection. Judges often rely on other judges, prosecuting attorneys, sheriffs, and law enforcement guilds for endorsements for election. A judge does not want to suggest another judge, prosecuting attorney, or law enforcement officer behaved in a way that continues institutional racism, even though institutional racism does not necessarily mean intentional racism.

In *Matter of Dependency of Q.S.*, 22 Wn. App. 2d 586, 515 P.3d 978 (2022), this court reversed a decision of Spokane County Court Commissioner Anthony Rugel. We expressed concern about the institutional racism impacting the outcome of the commissioner's decision. This court has since received an informal report that Commissioner Rugel graciously accepted our decision of reversal and has diligently sought to end racism in the child dependency system. Because of my high regard for Superior Court Judge Tony Hazel, I expect that he has done the same in response to our decision in *State v. Vaile.*

The prosecuting attorney's office faults my *Vaile* dissent for addressing racism when the issue was never raised by Darnai Vaile on appeal. This argument falls short for many reasons. Although Vaile's defense counsel did not thoroughly explore the institutional racism present in the arrest and prosecution of Vaile, counsel did complain about racism. RAP 12.1(b) allows a court to raise new issues. I asked my colleagues on the *Vaile* panel to direct the parties to address the racism present. My colleagues refused. Remarkably, however, the majority of the *Vaile* panel wrote, in its ruling denying motions for publication, that they were allowing Vaile, on remand, to seek dismissal because of racism. I had also

advocated for a remand to the superior court for a determination of whether to dismiss charges based on racism, but the majority would not join me. No practical difference lies between allowing the accused to seek dismissal before the superior court because of racism and remanding for the superior court to determine whether to dismiss on such grounds. The prosecuting attorney's office has not asked that any of my colleagues disqualify themselves as a result of their suggesting racism be addressed by the superior court.

The Spokane County Prosecuting Attorney's Office accuses me of bias or a lack of neutrality. King County Superior Court Judge Veronica Galván wrote to her colleagues about neutrality after reading the dissent in *State v. Vaile*:

> It is sometimes hard to think of doing the right thing as an act of valor and courage. The work we are called to does not often allow space to truly reflect on what our presence on this bench means juxtaposed against the weight of history. We call ourselves neutral, and yet must recognize that neutrality is often an adherence to a status quo that for many people has been anything but neutral. For this reason, I commend to you the recent dissenting opinion by Judge Fearing of Division III. Judge Fearing's dissent calls for each of us to truly consider how we engage in the work of being a judge. While the majority of his colleagues decided not to publish the opinion in this case, and by operation this extraordinary dissent, I intend to use it as learning tool as we learn about bias, racism, and the complicity of neutrality. The opinion is incredible in its scope as it casts an unflinching eye at the progress of a case from its inception, the 911 call that started it all, through the appellate process itself. It is a searing indictment of the legal system and the actions of everyone involved in continuing to perpetuate racism in our community and our society.

The Spokane County Superior Court 2020 open letter mentioned that courts usually avoid comment in order to maintain the neutrality demanded of us. But the Spokane County Superior Court made an exception for systemic and institutional racism. The court wrote: "In the face of recent reminders of the persistent devaluation and degradation of Black lives in America, we believe in the importance of not maintaining our silence in this instance."

Since the issuance of the *Vaile* decision, the Spokane County Prosecuting Attorney's Office and the Spokane County Sheriff's Office has repeatedly and publicly stated that their leaders have not one bone of racism in them. The Spokane County Superior Court, in its 2020 open letter, never ruled out the presence of racism within the Spokane County criminal justice system or its leaders. The letter would have served no purpose if Spokane County African-Americans did not suffer from persistent degradation of their lives.

An open letter from the Washington Supreme Court preceded the Spokane County Superior Court 2020 open letter. Appendix C is a copy of that letter. The Supreme Court asked that participants in the criminal justice system carefully and constantly reflect on how our actions enable systemic racism to continue. The letter encouraged all members of the Washington legal community to gain awareness of conscious and unconscious biases in order to bring justice in individual cases. The court directed that we no longer be bound by the ways things have always been done. Finally, the court implored the judiciary to gather the courage and will to end racial injustice in the legal system.

The prosecuting attorney's office's, the Spokane Police Department's, and the Spokane County Sheriff's Office's response to the *Vaile* dissent through their pleadings and letters filed in support of the motion for recusal show disdain for both the Washington Supreme Court and the Spokane Superior Court open letters. A Washington judge should not disqualify himself from criminal cases because of striving to fulfill the instructions of the Washington Supreme Court.

Members of the Spokane County Prosecuting Attorney's Office involved in the prosecution and Spokane County law enforcement officers involved in the arrest of Darnai Vaile refuse to engage in any self-reflection of their conduct, but instead cry foul because of the *Vaile* dissent. Spokane law enforcement officers will not even admit to the statistics that show racism inside the Spokane County criminal justice system, despite the statistics being formulated by those that law enforcement hired. Prosecuting attorneys and law enforcement will not admit to the existence of even one of the many factors I identified as illustrating institutional racism. In fact, the Prosecuting Attorney's Office has employed a tactic used since the 1860s-blame the one seeking to erase racism as perpetuating racism. The prosecuting attorney's office accuses me of exacerbating racism by

viewing a prosecution from the lens of Spokane's African-American community and viewing the arrest from an objective standard of history that recognizes the travail of African-Americans in the United States and in the Inland Empire.

Identifying systemic and institutional racism in the criminal justice system and seeking to eradicate the evil of racism from the justice system should not disqualify a judge. If it does, then the entire Spokane County Superior Court bench must disqualify themselves as a result of its open letter. One might respond that the Spokane County Superior Court judges, in the letter, spoke only in generalities and have never acted on their pledge to eradicate systemic racism in discrete cases. If that is true, another serious problem arises.

The prosecuting attorney's office's motion for recusal fulfills predictions I made in the *Vaile* dissent. I forecasted that the prosecuting attorney's office will deny any racism. I foresaw that, because the other members of this court's panel refused to address the racism inherent in the arrest and prosecution, the prosecuting attorney's office will consider my dissent to be outlandish. I noted that, without any recognition of the racism in the case by the white power structure in Spokane County, racism in the Spokane County criminal justice system will persist for decades.

------------

The *Vaile* dissent observed that the trial prosecuting attorney, on behalf of the State, attempted to exclude witnesses from testifying on the ground that the witnesses disliked law enforcement officers. Now, with the pending motion for disqualification, the Spokane County Prosecuting Attorney's Office wishes to remove a judge from deciding cases that the prosecution mistakenly believes dislikes law enforcement officers and prosecuting attorneys.

The Spokane County Prosecuting Attorney's Office demand for my disqualification carries implications beyond disqualifying one judge. The motion implicates the independence of the American judiciary. The motion suggests the prosecuting attorney's office believes it controls the courtroom and the judiciary. The prosecuting attorney's office's demand thwarts the separation of powers. The motion interferes in my electorate's choice three times to send me to this court.

I quote some of the passages from opponents to the prosecuting attorney's office's demand for disqualification. The Washington Defender Association wrote:

> To be frank, the demand that Judge Fearing not sit on cases involving the Spokane County Prosecutor's Office is a bald attempt to ensure that jurists who would call out systemic racial injustice are silenced.… It is a craven attempt to ensure that the racism that infected the *Vaile* case continues without judicial oversight.

The Washington Association of Criminal Defense Lawyers wrote:

> The State's efforts to avoid having its cases hear by a jurist they see as unfriendly is an overreach. "Judicial independence, free of external pressure or political intimidation, lies at the foundation of our constitutional democracy." Statement on the Rule of Law and an Independent Judiciary, https://www.federalbar.org/government-relations/fba-statements-letters-and-testimony/statement-on-the-rule-of-law-and-an-independent-judiciary. The effect of an entire county disqualifying a judge is not just an administrative nightmare, it is a powerful warning to judges that if they do not conform to the State's expectations, their ability to do their work as jurists will be severely curtailed, and they will be silenced. In criminal cases, both parties regularly deal with the perception that certain judges are more likely to be more receptive or less receptive to their positions. Cherry-picking judges with a request for across-the-board recusal is an improper flexing of the State's power to influence judicial decisions by virtue of the weight of the number of cases it argues at the appellate court level.

Washington Appellate Project wrote:

> The attorneys in my office have 320 years of combined experience representing people in appeals of their criminal convictions including cases before this Court. We have never seen so blatant an attempt by one litigant to silence those who would disagree with them. Each of the attorneys in my office could point to cases in

which we believe the court's opinions were wrong, and the representation of the facts incorrect. But despite those instances, we have never sought the wholesale disqualification of a judge. Because it would be improper to do so. It is particularly troubling where the effort is made by a representative of the State of Washington and where it is a transparent effort to silence criticism of racist outcomes. I urge this Court to refuse to permit this blatant attempt to tip the scales.

The people of this State choose who will decide cases as judges, not the interested litigants. What hope does it leave individuals who would challenge the impact of race in their Spokane County conviction in future appeals to know of past and presumably ongoing efforts of law enforcement to improperly influence those who will decide their cause?

The pastor of the Spokane Unitarian Universalist Church penned:

Let the Prosecutor prove the merits of his arguments in court, not through political maneuvers meant to silence thoughtful opposition, especially by suggesting an elected judge ought to be so thoroughly hampered from fulfilling his elected responsibilities. As an elected official himself, the Prosecutor must better learn to accept criticism rather than attempt to silence it, especially in such an all-encompassing, overly dramatic, and undemocratic way.

As noted by letters from Spokane Community Against Racism, The Way to Justice, NAACP Spokane Chapter, and Spokane Peace and Justice Action League, my disqualification from Spokane County cases would create staggering optics to the Spokane minority community because it confirms that even white people, let alone African-Americans, Native Americans, Hispanics, and other BIPOCs, who seek to end racial injustice will be silenced by a prosecuting attorney whose wife openly and proudly speaks and demonstrates racism. The letters from each group document the ongoing racism endemic to the Spokane County criminal justice system and the need for courts to combat this injustice.

------------

I now mention some events occurring since release of the opinions in *State v. Vaile.* On May 21, I listened to a voice mail message on my court landline phone. An angry, anonymous male voice stated he was a "concerned citizen." The caller bespoke the same themes as presented by the prosecuting attorney's office in its demand for my recusal, including accusations of my being a racist. The caller labeled my decision in *Vaile* as outrageous. He described me as a disgrace to the judiciary. He repeatedly uttered the word "woke," as if branding me as "woke" explained everything. He ended his message with derogatory comments about Spokane's African-American community being criminals.

In August, I received a public records request from Sheriff Deputy Clay Hilton, one of the deputies who arrested Darnai Vaile. The request demanded production of all communications I have had with anyone, including my own law clerks, about the *Darnai Vaile* case. In his request, Deputy Hilton referred to himself as a "concerned citizen." In early September, an attorney for Deputy Hilton announced that Hilton will be suing me.

Deputy Clay Hilton's conduct since the issuance of the decision in *State v. Vaile* suggests that he works as a law enforcement officer not to serve others and benefit the Spokane community, but to intimidate and dominate. I hold no ill will toward Deputy Hilton, but have concern about his anger, inability to reflect on his behavior, and insistence on retaliation. I lack confidence in his credibility. As a matter of precaution, I will recuse myself from cases in which Clay Hilton is a witness and his testimony is relevant to resolution of an appeal. I will do so not because of events leading to the Darnai Vaile prosecution but because of events after filing of the *Vaile* opinion. The Spokane County Prosecuting Attorney's office should notify this court if Deputy Hilton was a testifying witness and his testimony bears relevance to an appeal's disposition. I will also recuse myself from any appeal, in which either Larry Haskell or Leslie Haskell is a named party.

------------

When I sought retention to my position on the Court of Appeals in the fall of 2013, the *Tri-City Herald* editorial board interviewed my campaign opponent and me. The newspaper publisher commented on my representation of law

enforcement officers throughout my career, and he wondered if I could be fair to the criminally accused. Because I had no ready answer to the editor's concern and because a newspaper's criticism of a judge as being predisposed to rule against criminal defendants assists in the judge's election, I did not dissuade the editor of his notion. But the editor's comment and question caused me to reflect. On reflection, I pledged again to myself that I would listen to all parties, review the facts and law without any predisposition, and follow the rulings of the United States and Washington Supreme Courts. I did so when writing my *Vaile* dissent.

With my ruling in response to the Spokane County Prosecuting Attorney's Office demand for my disqualification, I again pledge to my electorate, to the people of Spokane County, to the prosecuting attorneys of Spokane County, to the law enforcement officers of Spokane County, to the victims of crimes in Spokane County, to the accused inside the Spokane County criminal justice system, and to appellate criminal defense counsel to listen to all parties, review the facts and law without any predisposition, and to follow the rulings of the United States and Washington Supreme Courts. I also pledge to continue to accept the call of the Washington Supreme Court to summon the will and courage to eradicate racism infecting the criminal justice system. My prayer each morning will continue to come from Micah 6:8: Lord, help me to act justly, to love mercy, and to walk humbly with you.

Respectfully Yours,

George Fearing

## APPENDIX A

-----Original Message-----
From: Fearing, George <George.Fearing@courts.wa.gov>
Sent: Friday, February 10, 2023 1:08 PM
To: Lundgren, Alexis M. <alundgren@spokanecounty.org>; Andrea@2arrows.net
Subject: appellate advocacy

The two of you were opponents in two appeals, which included oral argument, in January. After each argument and during panel conferences, all three judges praised both or your advocacy skills and brief writing.

Geo

APPENDIX B

State v. Dite
No. 38878-6-III
AUGUST 17, 2023
Attempting to elude a police vehicle
Fearing joined other members of the panel in affirming the conviction

State v. Dunbar
532 P.3d 652
July 18, 2023
Fearing joined the entire panel in remanding for resentencing

State v. Denison
2023 WL 4362816
July 6, 2023
Fearing joined the entire panel in denying the accused's motion to restore firearm rights

State v. Taylor
2023 WL 4195565
No. 38664-3-III
Filed June 27, 2023
Fearing joined the entire panel in affirming the sentence

State v. Moore
2023 WL 3116662
No. 38643-1-III
Filed April 27, 2023
Three counts rape of a child in first degree
Fearing joined other members of the panel in affirming the convictions

State v. Dyfort
2023 WL 2879420
No. 38536-1-III
Filed April 11, 2023
Second degree assault with a deadly weapon and first degree arson
Fearing joined other members of the panel in affirming the convictions
Fearing wrote the opinion

State v. McCabe
526 P.3d 891
No. 38180-3-III
Filed April 6, 2023
First degree trafficking in stolen property, third degree theft, and bail jumping
Fearing joined other members of the panel in affirming the conviction

State v. Wilson
2023 WL 2767267
No. 38606-6-III cons. with, No. 38922-7-III
Filed April 4, 2023
Attempted kidnapping and trafficking in stolen property
Fearing joined other members of the panel in affirming the conviction
Fearing wrote the opinion

State v. Manina
No. 38468-3-III
April 4, 2023
Fearing joined other panel members in affirming convictions for rape and two counts of first degree child molestation, but reversed a second degree child molestation conviction.
Fearing wrote the opinion

In the Matter of Detention of Austin
No. 38343-1-III
Filed April 4, 2023
26 Wn. App.2d 1011
Fearing joined the panel in affirming the appellant's detention as a sexually violent predator

State v. Hanson
25 Wn. App.2d 1073
No. 38535-3-III
Filed March 21, 2023
Fearing joined with other panel members in remanding for resentencing based on the State's concession of a miscalculated offender score
Fearing wrote the opinion

State v. Bost
25 Wn. App.2d 1065
No. 38530-2-III
March 14, 2023
Fearing joined with other panel members in remanded to the superior court to redetermine whether the accused should be acquitted of first degree murder by reason of insanity

State v. Preble
25 Wn. App.2d 1059
No. 38625-2-III
Filed March 9, 2023
Fearing joined with other panel members in affirming some community custody conditions and reversing others

State v. Potts
25 Wn. App.2d 1053
No. 38345-8-III
Filed March 2, 2023
Panel confirmed convictions for assault on wife, unlawfully imprisoning his wife, and unlawfully imprisoning his stepdaughter.
Fearing wrote the opinion for the panel

State v. Irizarry
No. 38667-8-III
25 Wn. App. 2d 1026 (2023)
Filed January 24, 2023
Panel affirmed conviction for second degree assault with a deadly weapon
Fearing wrote the opinion

State v. Brown
25 Wn. App.2d 634
No. 38749-6-III
Filed February 23, 2023
Panel affirmed conviction for second-degree trespass
Fearing wrote the opinion

State v. Bergstrom
25 Wn. App.2d 1025
No. 38514-1-III
Fearing joined panel in denying motion to vacate guilty plea but remanded for resentencing

State v. Pond
24 Wn. App.2d 1042
No. 38176-5-III
Filed December 8, 2022
Panel affirmed conviction for attempted child molestation in the first degree
Fearing wrote the opinion

Personal Restraint of Moen
24 Wn. App.2d 1031
No. 38496-9-III
Filed November 17, 2022
Petitioner sought vacation of conviction for child molestation.
Fearing joined panel in dismissing the petition

State v. Hopkins
24 Wn. App.2d 1025
No. 38209-5-III
Filed November 10, 2022
Panel affirmed convictions for attempting to elude a police vehicle and second degree criminal trespass.
Fearing wrote the opinion

State v. Crossguns
23 Wn. App.2d 1038
No. 37079-8-III
Filed October 4, 2022
On remand from the Supreme Court, panel affirmed conviction for second degree rape of a child and second degree child molestation
Fearing wrote the opinion

State v. Chambers
23 Wn. App.2d 917
No. 38282-6-III
Filed October 4, 2022
Convictions for 24 counts of first-degree possession of depictions of minor engaged in sexually explicit conduct, two counts of first-degree dealing in depictions of minor engaged in sexually explicit conduct, and one count of second-degree dealing in depictions of a minor engaged in sexually explicit conduct.
Fearing joined panel in affirming all convictions

State v. Flett
23 Wn. App.2d 1028
No. 38452-7-III
Filed September 20, 2022
Fearing joined panel in affirming criminal judgment and sentence

State v. Sheldon
23 Wn. App.2d 1019
No. 38012-2-III (consolidated with No. 38013-1-III, No. 38014-9-III, No. 38015-7-III)
Filed August 30, 2022
Fearing joined panel in affirming resentencing

State v. Croson
23 Wn. App.2d 1018
No. 37842-0-III
Filed August 30, 2022
Fearing joined panel in affirming convictions for possession of stolen motor vehicle and possession of a motor vehicle theft tool.

APPENDIX C

June 4, 2020

Dear Members of the Judiciary and the Legal Community:

We are compelled by recent events to join other state supreme courts around the nation in addressing our legal community.

The devaluation and degradation of black lives is not a recent event. It is a persistent and systemic injustice that predates this nation's founding.  But recent events have brought to the forefront of our collective consciousness a painful fact that is, for too many of our citizens, common knowledge: the injustices faced by black Americans are not relics of the past.  We continue to see racialized policing and the overrepresentation of black Americans in every stage of our criminal and juvenile justice systems.  Our institutions remain affected by the vestiges of slavery: Jim Crow laws that were never dismantled and racist court decisions that were never disavowed.

The legal community must recognize that we all bear responsibility for this on-going injustice, and that we are capable of taking steps to address it, if only we have the courage and the will.  The injustice still plaguing our country has its roots in the individual and collective actions of many, and it cannot be addressed without the individual and collective actions of us all.

As judges, we must recognize the role we have played in devaluing black lives. This very court once held that a cemetery could lawfully deny grieving black parents the right to bury their infant.  We cannot undo this wrong—but we can recognize our ability to do better in the future.  We can develop a greater awareness of our own conscious and unconscious biases in order to make just decisions in individual cases, and we can administer justice and support court rules in a way that brings greater racial justice to our system as a whole.

As lawyers and members of the bar, we must recognize the harms that are caused when meritorious claims go unaddressed due to systemic inequities or the lack of financial, personal, or systemic support. And we must also recognize that this is not how a justice system must operate. Too often in the legal profession, we

feel bound by tradition and the way things have "always" been. We must remember that even the most venerable precedent must be struck down when it is incorrect and harmful. The systemic oppression of black Americans is not merely incorrect and harmful; it is shameful and deadly.

Finally, as individuals, we must recognize that systemic racial injustice against black Americans is not an omnipresent specter that will inevitably persist. It is the collective product of each of our individual actions—every action, every day.  It is only by carefully reflecting on our actions, taking individual responsibility for them, and constantly striving for better that we can address the shameful legacy we inherit.  We call on every member of our legal community to reflect on this moment and ask ourselves how we may work together to eradicate racism.

As we lean in to do this hard and necessary work, may we also remember to support our black colleagues by lifting their voices.  Listening to and acknowledging their experiences will enrich and inform our shared cause of dismantling systemic racism.

We go by the title of "Justice" and we reaffirm our deepest level of commitment to achieving justice by ending racism.  We urge you to join us in these efforts.  This is our moral imperative.